IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

16 MAR 17 PM 4:07

CLERK-ALBUQUERQUE

ROBERT M. BOUGHTON,

    Plaintiff,

vs.

MICHAEL KRISTEK and SUSAN KRISTEK,

    Defendants

**Complaint and Request for Injunction**

Case No.: 16 cv 202 KBM

## I. PARTIES

### A. Plaintiff

Name Robert M. Boughton
Street Address 509 Indiana St. SE Apt. C
City and County Albuquerque, Bernalillo County
State and ZIP Code New Mexico 87108
**Mailing Address:** PO Box 11103
**City and County:** Albuquerque, Bernalillo County
**State and ZIP Code:** New Mexico 87192-0103
Telephone Number (505) 544-7141
E-mail Address rakntur@yahoo.com

### B. Defendants

Defendant No. 1

Name Michael Kristek
Job or Title Apartment Manager/Co-Owner
Street Address 5623 Cletsoway Dr. SW
City and County Albuquerque, Bernalillo County
State and ZIP Code New Mexico 87105
Telephone Number (505) 363-6547

1    E-mail Address <u>Unknown</u>

2    Defendant No. 2

3    Name <u>Susan Kristek</u>
4    Job or Title <u>Apartment Co-Owner</u>
5    Street Address <u>5623 Cletsoway Dr. SW</u>
6    City and County <u>Albuquerque, Bernalillo County</u>
7    State and ZIP Code <u>New Mexico 87105</u>
8    Telephone Number <u>(505) 877-1254</u>
     E-mail Address <u>Unknown</u>

## II. JURISDICTION

This civil action arises from repeated violations of Federal Communications Commission ("FCC") regulations by the defendants, and the Court therefore has general jurisdiction under 28 U.S.C. § 1331 and specific jurisdiction per 47 C.F.R. § 1.4000 (c) (2) (e).

**A.** Central to the case is 47 C.F.R. § 1.4000 et seq., dealing with prohibitions against restrictions that in any way impair a consumer's right and ability to receive Direct Broadband Satellite Service ("DBSS") in a normal rental housing setting.

## III. STATEMENT OF CLAIM

A series of communications among the plaintiff and the defendants, concerning the dispute in question, began on February 12, 2016 at approximately 9:00 a.m. A technician from the DBSS provider, Cibola Wireless ("Cibola"), arrived at the plaintiff's home at 509 Indiana Street SE Apt. C, in Albuquerque ("the premises") to perform the dish installation. Part of the arrangement the plaintiff made with Cibola included a waiver of its usual $100 installation charge. Cibola's technician ("Jacob") informed the plaintiff for the first time that permission from the owner or landlord was needed before he could proceed.

The plaintiff telephoned Defendant No. 1, not anticipating any opposition, but was told of

the "policy" prohibiting dish installations without a "fee" of $100.00 and the plaintiff's signature on a formal agreement assuming responsibility for damages presumed, before the fact, would necessarily result from the professional installation of an internet satellite dish.

Having subscribed to DBSS internet and television by other providers in the past, in which the installations caused no damage, the plaintiff attempted to reason with Defendant No. 1, who maintained the unnegotiable position requiring the fee and signed agreement.

During the next several weeks, the plaintiff left telephone messages with and spoke to Defendant No. 1 about the plaintiff's desire to discuss a forbearance of the fee while agreeing to sign a written agreement accepting full responsibility for any unlikely damages to the premises. Defendant No. 1 at first delayed these good faith efforts to resolve the conflict and then reverted to the original position.

Suspecting that the defendants' stated policy obstructing DBSS installations violated federal law, the plaintiff consulted the lease and found a previously unnoticed rule that read succinctly, "No satellite TV allowed." Although the required DBSS was for Internet access, the plaintiff recognized that the distinction would likely be considered quibbling. At that point, the plaintiff researched FCC regulations on the subject and discovered the Code of Federal Regulations Title and Sections cited above, rendering the no satellite clause of the lease void..

The plaintiff then re-scheduled the DBSS installation with Cibola for March 8, 2016 between 8:00 a.m. and noon. At 9:08 a.m. on the appointed date, Jacob, the same installer as before, telephoned to say he was on his way, and at about 9:15 a.m. he arrived. Jacob again asked if permission for the installation had been obtained. When the plaintiff cited the FCC regulations "Preempt[ing]…Restrictions That 'Impair' the Ability To Receive…Direct Broadband Satellite Services," i.e.., that the defendants' refusal to cooperate was unlawful, Jacob

said he would have to call his supervisors at Cibola for permission to proceed.

When Jacob was unable to secure the approval necessary to protect himself as an employee, the plaintiff telephoned Defendant No. 1 and left a voice message. Jacob, who was friendly and professional at all times, was then forced to depart again without completing the installation.

At 9:35 a.m., minutes after Jacob left, Defendant No. 1 responded to the plaintiff with a telephone instant message that read: "Robert before I can give permission you need to pay $100 cable deposit [sic., both words] and sign cable [sic.] agreement. Let me know when you have the deposit [sic.] and I will bring over the agreement then you can make appointment with internet people."

At 9:53 a.m., the plaintiff completed and sent a reply with details of the FCC regulations, quoting in applicable part for his benefit that the law prohibits any acts that "unreasonably delay or prevent installation…unreasonably increase the cost of installation, maintenance or use…or preclude reception of a quality signal." The plaintiff noted that Defendant No. 1 consequently was violating federal law and installation needed to be completed the same day to avoid court action compelling compliance. The plaintiff provided the name and telephone number of the Cibola sales representative in charge of the pending account.

At 9:55 a.m., Defendant No. 1 telephoned the plaintiff directly, and the two parties discussed the issue for three minutes and 27 seconds. Faced with the irrational and unreasonably persistent refusal of Defendant No. 1 to negotiate a settlement and comply with the law, the plaintiff asked, "So what you're saying is basically that you're prepared to flaunt federal law to prevent me from getting Internet service?" Defendant No. 1 stated, in effect, that he was. The plaintiff advised Defendant No. 1 of his intention to file a complaint in this Court, to which

Defendant No. 1 said, "You can do whatever you want to do."

At 1:04 p.m., Defendant No. 2 telephoned the plaintiff to explain that she spoke with someone at Cibola who was "very unfriendly" and did not give a name, but confirmed that drilling would be required for the installation of the dish and that was why the defendants insisted on a fee and signed agreement. Defendant No. 2 elaborated on how dish satellite services "always promise no permanent damage will be made and promise to remove the dishes, but this is never what happens." Defendant No. 2 went so far as to claim that holes large enough for "rain and other things to fall through" would be created by the DBSS installation.

The consistent use of the term fee, meaning payment of money in exchange for a service, is combined with corresponding references to alleged experiences with dish installations invariably ending in harm to the defendants' various properties. Considering, along with the fee, a signed agreement wherein the plaintiff still assumes full responsibility for frivolous expectations of damages, a goal motivated purely by monetary gain and the clear anticipation of withholding the $200.00 security deposit upon the plaintiff's eventual but not yet planned move-out, is strongly indicated.

A review of 47 C.F.R. § 1.4000 should suffice to establish that the plaintiff is entitled to an immediate injunction compelling defendants to desist their ongoing insistence on a fee and a coercive signed agreement wherein plaintiff additionally accepts responsibility for any damages to the premises the defendants unreasonably imagine will necessarily result from the professional installation of a satellite Internet dish.

The plaintiff apologizes for the extended length of this Statement of Claim but is certain the Court will recognize the relevance of the facts presented.

### IV. IRREPARABLE INJURY

Monetary damages at a later time would not adequately compensate the plaintiff for injuries that have already been sustained, are now being sustained and will continue to be sustained as a result of the events described above if an injunction ordering the defendants to comply with the law and/or Cibola to proceed with the installation anyway is not issued and relief granted. The plaintiff is permanently disabled with primary income derived from Social Security Disability Insurance ("SSDI") benefits. Sporadic earnings, from a home-based online business restoring and selling estate tobacco pipes and also offering services for cleaning and restoring pipes already owned by collectors, are not yet sufficient to owe taxes after filing state and federal returns.

The plaintiff's last part-time job as consumer-directed caregiver to his longtime roommate and friend ended in October upon the sudden and unexpected death of the roommate. Attempts by the plaintiff to secure another suitable part-time job to supplement SSDI benefits have been delayed by complications including the limits of the plaintiff's ability to perform and/or hold most available jobs. The plaintiff remains confident of finding work that is appropriate given the disabilities.

Access to the Internet at an affordable price is critical to the slow but continuing growth of the plaintiff's mostly online business with some local sales. The dishonesty, refusal to negotiate in good faith, and now deliberate scoffing at FCC regulations by the defendants, have already forced the plaintiff to continue paying a large national cable Internet Service Provider ("ISP") more than twice the monthly cost of Cibola's DBSS dish Internet.

### V. RELIEF

The plaintiff requests relief in the amount of $160.00 per month, totaling $320.00, for the two months the defendants have already delayed installation of Cibola DBSS Internet access,

representing the difference in cost of the plaintiff's present cable service and the Cibola dish coverage price, or for as long as the Court may take to issue an injunction and grant relief.. Had the defendants complied with the applicable regulations voluntarily and in a timely manner, the plaintiff would not have suffered the considerable financial hardship of maintaining present cable ISP service, which is no longer viable to manage.

The defendants' culpability for the extreme cost difference is demonstrated by the plaintiff's cell phone direct call and instant message records, which are available for review, and the defendants' repeated refusals to allow the far less expensive new service installation can be verified by telephoning Cibola at (505) 369-7979 and speaking to any customer service representative or choosing option four and dialing extension 2406 to reach Jessica Mathis, the sales representative in charge of the pending account.

Furthermore, the landline phone for which the plaintiff presently pays an additional $47.00 per month will be replaced with comparable Voice over Internet Protocol ("VoIP") service included in the $80.00 Cibola monthly charge, not counting taxes.

In addition, the plaintiff requests punitive damages in the amount of $500.00 for the time and effort the plaintiff has been compelled to invest in drafting and filing this complaint and the defendants' utter rejection of good faith negotiation attempts, citation of federal law mandating their compliance with the plaintiff's reasonable request and at last fair warning of the plaintiff's lack of any other effective remedy at law than taking this course of action.

### VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A. For Parties without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: March 17, 2016.

_____
Signature of Plaintiff
Robert M. Boughton
Printed Name of Plaintiff