**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ROBERT M. BOUGHTON,

         Plaintiff,

v.                                        No. 16cv202 JCH/KBM

MICHAEL KRISTEK and SUSAN KRISTEK,

         Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      **THIS MATTER** comes before the Court on *pro se* Plaintiff Robert M. Boughton's Second Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 10, filed March 24, 2016 ("Second Application"), on his Third Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 11, filed March 31, 2016 ("Third Application"), and on his Complaint, Doc. 1, filed March 17, 2016.   For the reasons stated below, the Court will **GRANT** Plaintiff's Third Application, **DENY** his Second Application **as moot**, and **DISMISS** the Complaint **without prejudice.**   Plaintiff shall have 21 days from entry of this Order to file an amended complaint.   Failure to timely file an amended complaint may result in dismissal of this case without prejudice.

**Second and Third Applications to Proceed *in forma pauperis***

      The Court denied Plaintiff's First Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 2, filed March 17, 2016, because his reported monthly Social Security Disability income of $4,250.00 exceeded his monthly expenses of $883.00 by $3,367.00. *See* Doc. 7.   The Court ordered Plaintiff to pay the $400.00 fee for instituting a new case or show cause why this case should not be dismissed without prejudice for failure to pay the filing fee.   *See* Doc. 7.   In response, Plaintiff filed his Second Application to proceed *in forma pauperis* on

March 24, 2016.   A week later, Plaintiff filed his Third Application to proceed *in forma pauperis*.

Plaintiff's Third Application indicates that his monthly Social Security Disability income is $895.00 and that his monthly expenses are $1,208.55.   Plaintiff does not explain why the income and expenses amounts in his Third Application are different from those in his First Application.   Because he signed an affidavit declaring under penalty of perjury that the information in his Third Application is true, and because his reported monthly expenses exceed his reported monthly income, the Court will grant Plaintiff's Third Application to proceed *in forma pauperis*.   Because it is granting Plaintiff's Third Application to proceed *in forma pauperis*, the Court will deny Plaintiff's Second Application as moot.

**Lack of Subject Matter Jurisdiction**

The Court will dismiss the Complaint because it lacks jurisdiction to consider Plaintiff's claims.   *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Plaintiff asserts that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   Plaintiff rents an apartment and intended to install a satellite internet dish.   Defendants, owners of the apartment, allegedly told Plaintiff that the installation was prohibited without payment of a $100.00 fee and Plaintiff's signature on an agreement assuming responsibility for damages resulting from the installation of the satellite dish.   *See* Complaint at 2-3.   Plaintiff asserts that the Court has federal question jurisdiction because "[c]entral to this case is 47 C.F.R. § 1.4000 et seq., dealing with prohibitions against restrictions that in any way impair a consumer's right and ability to receive

2

Direct broadband Satellite Service ("DBSS") in a normal rental housing setting."   Complaint at 2.

The Federal Communications Commission ("FCC") promulgated 47 C.F.R. § 1.4000 pursuant to Section 207, "Restrictions on Over-the-Air Reception Devices," of the Telecommunications Act of 1996 which provides:

> Within 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.

Pub.L. No. 104-104, 110 Stat. 114 (February 8, 1996) ("Section 207").   The regulation Plaintiff relies on to establish federal question jurisdiction, 47 C.F.R. 1.4000, "Restrictions impairing reception of television broadcast signals, direct broadcast satellite services or multichannel multipoint distribution services," provides in relevant part:

> Any restriction, including but not limited to any state or local law or regulation, including zoning, land-use, or building regulations, or any private covenant, contract provision, lease provision, homeowners' association rule or similar restriction, on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of:
>
> (i) An antenna that is:
>
> (A) Used to receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite . . . .

47 C.F.R. § 1.4000(a)(1)(i).   Plaintiff does not cite any other federal laws which give rise to this action.

The Court of Appeals for the Ninth Circuit concluded that neither Section 207 nor Section 1.4000 give rise to a private cause of action where a homeowners' association sued condominium owners, seeking a declaration approving a prohibition against installing satellite dishes in common

areas.   *See Opera Plaza Residential Parcel Homeowners Assoc. v. Hoang*, 376 F.3d 831 (9th Cir.

2004).   After noting that "the fact that a federal statute has been violated and some person has

been harmed does not automatically give rise to a private cause of action in favor of that person,"

the Ninth Circuit applied the four-factor *Cort v. Ash* test to determine whether Section 207 or

Section 1.4000 give rise to a private cause of action.   *Opera Plaza*, 376 F.3d at 834 (quoting

*Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).   The

four *Cort* factors are:

> First, is the plaintiff one of a class for whose especial benefit the statute was
> enacted—that is, does the statute create a federal right in favor of the plaintiff?
> Second, is there any indication of legislative intent, explicit or implicit, either to
> create such a remedy or to deny one? Third, is it consistent with the underlying
> purpose of the legislative scheme to imply such a remedy for the plaintiff?   And
> finally, is the cause of action one traditionally delegated to state law, so that it
> would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78 (1975) (citations omitted).

The Second Circuit, noting the importance of the second factor (legislative intent), applied

*Cort* when analyzing whether there was a private cause of action under a different section of the

Telecommunications Act:

> [The United States Supreme Court] thereafter instructed that the second
> factor—Congressional intent—is the critical inquiry, *see Touche Ross,* 442 U.S. at
> 575–76, 99 S.Ct. 2479; *see also McClellan v. Cablevision of Conn., Inc.,* 149 F.3d
> 161, 164 (2d Cir.1998) (explaining that the other factors are treated as proxies for
> Congressional intent), and that the burden of demonstrating Congressional intent
> rests with the plaintiff, *see Suter v. Artist M.,* 503 U.S. 347, 363–64, 112 S.Ct. 1360,
> 118 L.Ed.2d 1 (1992); *see also New York City Envtl. Justice Alliance v. Giuliani,*
> 214 F.3d 65, 73 (2d Cir.2000) ("The person seeking a private remedy bears the
> burden of demonstrating that Congress intended to make one available.").

Plaintiffs failed to meet their burden here.   As the District Court correctly noted,

> the FCC is primarily responsible for the interpretation and
> implementation of the Telecommunications Act and FCC

> regulations. These broad powers granted to the FCC to enforce the Act would be inconsistent with a private right of action because "[p]rivate litigation tends to transfer regulatory interpretation and discretion from the agency to the courts."
>
> *Conboy,* 84 F.Supp.2d at 501 (alteration in original) (citations omitted) (quoting *Caceres Agency, Inc. v. Trans World Airways, Inc.,* 594 F.2d 932, 934 (2d Cir.1979)).
>
> Indeed, a private right of action would place the FCC's "interpretative function squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission.... The result would be to deprive the FCC of necessary flexibility and authority in creating, interpreting, and modifying communications policy." *New England Tel. & Tel. Co. v. Public Utils. Comm'n,* 742 F.2d 1, 6 (1st Cir.1984) (Breyer, J.). It is highly unlikely, therefore, that Congress intended to create a private right of action for violations of FCC regulations. Such a right would "threaten[ ] the sound development of a coherent nationwide communications policy—a central objective of the [Communications] Act." *Id.* at 5.

*Conboy v. AT&T Corp.*, 241 F.3d 242, 252-253 (2d Cir. 2001) (addressing whether a different section of the Telecommunications Act gives rise to an implied right of action). Similarly, the Ninth Circuit has focused on Congressional intent as the key factor in determining whether the plaintiff has a private cause of action.

> In the *Cort* analysis, the second factor—whether Congress intended to provide the plaintiff with a private right of action—is the key inquiry in this calculus. *See, e.g., Helfer,* 224 F.3d at 1121. The burden is on the plaintiff seeking to establish that a private right of action exists. *See Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). Importantly, there is support for the proposition—extremely damaging to Opera Plaza's argument—that only federal statutes, and not rules adopted pursuant to that statute, can create a private cause of action, as the district court noted. *See Touche Ross,* 442 U.S. at 577 n. 18, 99 S.Ct. 2479 (Plaintiffs "appear to suggest that the rules adopted under [the federal statute in question] can themselves provide the source of an implied damages remedy even if [the statute] itself cannot. It suffices to say, however, that the language of the statute and not the rules must control.") (citation omitted).

*Opera Plaza*, 376 F.3d at 835.

In reaching its conclusion that Section 207 of the Telecommunications Act of 1996 and

47 C.F.R. § 1.4000 do not give rise to a private right of action, the Ninth Circuit considered only the first two *Cort* factors.  *See Opera Plaza*, 376 F.3d at 837 ("That the first two *Cort* factors weigh against finding a private right of action is dispositive of our inquiry").

The Ninth Circuit concluded that the first *Cort* factor weighs against finding an implied right of action because the plaintiff was not a "viewer" and thus did not belong to the class for whose benefit the provision was enacted:

> In applying the first *Cort* factor, courts look to whether the plaintiffs that claim a cause of action exists are specifically mentioned as beneficiaries in the statute. *See Cannon v. University of Chicago,* 441 U.S. 677, 690–91, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross,* 442 U.S. at 568, 99 S.Ct. 2479 (a private right of action is often found in statutes that "at least prohibited certain conduct or create federal rights in favor of private parties"); *Helfer,* 224 F.3d at 1122–23 ("[W]e have determined that the first factor of the *Cort* test is satisfied when there is an explicit reference to the individuals for whose benefit the statute was enacted."). "The question is not simply who would benefit from the [law], but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club,* 451 U.S. at 294, 101 S.Ct. 1775.
>
> Section 207, the only relevant provision that mentions any party specifically, clearly intends to benefit satellite television *viewers;* it provides that "the [Federal Communications] Commission shall ... promulgate regulations to prohibit restrictions that impair a *viewer's* ability to receive video programming services through devices designed for over-the-air reception ...." (emphasis added). Section 205, the other statute cited by Opera Plaza, does not on its face create rights in any party's favor. Even § 207 merely tells the FCC to promulgate regulations, and does not speak to whether a federal cause of action is created. For example, it is entirely possible that Congress merely intended that disgruntled viewers could file a complaint with the FCC. The first *Cort* factor thus weighs against finding an implied right of action.

*Opera Plaza*, 376 F.3d at 835.

"The second and most important *Cort* factor, *see Thompson,* 484 U.S. at 179, 108 S.Ct. 513; *Transamerica Mortgage,* 444 U.S. at 15–16, 100 S.Ct. 242 ("what must ultimately be determined is whether Congress intended to create the private remedy asserted"), examines

legislative intent to create a private cause of action." *Opera Plaza*, 376 F.3d at 836. After reviewing the language of Section 207 and its statutory context, the Ninth Circuit found that § 207 has no language that contemplates parties bringing lawsuits, the House Committee Report on § 207 gives no indication that the statute created a federal cause of action, and that "no portion of Title II of the Telecommunications Act of 1996 contemplates or in any way addresses litigation, and this suggests that no private cause of action exists under §§205 and 207." *Opera Plaza*, 376 F.3d at 837. Regarding 47 C.F.R. § 1.4000, the FCC regulation which Plaintiff contends confers subject matter jurisdiction on the Court in this matter, the Ninth Circuit stated:

> However, as noted above, a regulation promulgated by an administrative agency such as the FCC cannot by itself, in the absence of congressional authorization, confer subject matter jurisdiction on federal courts. *See Touche Ross,* 442 U.S. at 577 n. 18, 99 S.Ct. 2479. Thus, while the language of § 1.4000 may evidence an intent by the agency to allow suits to proceed in "a court of competent jurisdiction," this is insufficient to create subject matter jurisdiction in the federal courts.

*Opera Plaza*, 376 F.3d at 837.

In the case now before the Court, the first *Cort* factor weighs in favor of finding a private right of action because Plaintiff is a "viewer" and "Section 207 . . . clearly intends to benefit satellite television *viewers*." *Opera Plaza*, 376 F.3d at 835.

The Court concludes that the second *Cort* factor, Congressional intent, does not weigh in favor of finding a private right of action for the same reasons given by the Ninth Circuit in *Opera Plaza*.

The third *Cort* factor, "is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff," does not weigh in favor of finding a private right of action. The underlying purpose of the Telecommunications Act of 1996 is "to introduce competition into the once monopolized telecommunications markets." *Qwest Communications*

7

*Intern., Inc. v. F.C.C,* 398 F.3d 1222, 1226 (10th Cir. 2005); *Qwest Corp. v. F.C.C.*, 689 F.3d 1214, 1216 (10th Cir. 2012) ("In the Telecommunications Act of 1996 . . . Congress upended the existing telecommunications regulatory regime and imposed on the monopolistic local phone companies . . . several new requirements designed to enhance competition in the market for local telephone service").   While the consumer is an intended beneficiary of the Telecommunications Act of 1996, the Act is designed to enhance competition by facilitating the entrance of new providers to the market.   *See Qwest Corp. v. Public Utilities Com'n of Colorado*, 479 F.3d 1184, 1186-1187 (10th Cir. 2007) ("In passing the [Telecommunications Act of 1996], Congress hoped to obtain the benefits of competition for the American consumer while avoiding, as much as possible, the potential that established entities would use their existing market power to prey on would-be market entrants").

The fourth *Cort* factor, "is the cause of action one traditionally delegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law," weighs in favor of an implied right of action, because enforcement of federal regulations is not delegated to state law.

The Court concludes that Section 207 for the Federal Telecommunications Act of 1996 and 47 C.F.R. § 1.4000 do not give rise to a private cause of action.   While two of the *Cort* factors weigh in favor of a private right of action, and two weigh against, the most important *Cort* factor, Congressional intent, weighs against a private right of action.   *See Conboy v. AT&T Corp.*, 241 F.3d 242, 252-253 (2d Cir. 2001) (noting that the United States Supreme Court instructed that the second factor—Congressional intent—is the critical inquiry, and that the other factors are treated as proxies for Congressional intent).

8

As the party seeking to invoke the jurisdiction of this Court, Plaintiff bears the burden of alleging facts that support jurisdiction.   *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").   Plaintiff has not made an adequate showing that the Court has jurisdiction over this matter.   Rule 12(h)(3) of the Federal Rules of Civil Procedure states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."   However, "pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991).

The Court will dismiss Plaintiff's Complaint without prejudice because Plaintiff has not meet his burden of alleging facts that support jurisdiction.   *See Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218 (10th Cir.2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.").   Plaintiff shall have 21 days from entry of this Order to file an amended complaint.   Failure to timely file an amended complaint may result in dismissal of this case without prejudice.

**IT IS ORDERED** that Plaintiff's Third Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 11, filed March 31, 2016, is **GRANTED.**

**IT IS ALSO ORDERED** that Plaintiff's Second Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 10, filed March 24, 2016, is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Complaint, Doc. 1, filed March 17, 2016, is **DISMISSED without prejudice.**   Plaintiff may file an amended complaint within 21 days of

entry of this Order.

_____
**UNITED STATES DISTRICT JUDGE**